

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-2005

# USA v. Quinceno-Montoya

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Quinceno-Montoya" (2005). *2005 Decisions.* Paper 1079.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1079

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.: 04-1299

UNITED STATES OF AMERICA

v.

VICTOR HUGO QUICENO MONTOYA,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 98-cr-701)
District Judge: Mary Little Cooper

Submitted: March 8, 2005

Before: NYGAARD, McKEE and RENDELL, Circuit Judges

(Filed June 1, 2005)

OPINION

McKEE, Circuit Judge.

Victor Hugo Quiceno Montoya appeals from a final judgment of sentence. He raises several claims of trial error and a claim of sentencing error. For the reasons set forth below, we reject each of his challenges to the court's trial rulings. However, in the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. —, 125 S.Ct.

738 (2005), we will remand for resentencing.

## I.

Inasmuch as we write only for the parties, we need not reiterate the factual background of this case except insofar as may be helpful to our brief discussion.

## A.

The trial judge excluded evidence relating to a plea agreement that co-defendant Helmer Andres Saavedra ("Saavedra") had entered into.[1] Montoya argues it was important for the jury to know that Saavedra's agreement was conditioned upon his *truthful* testimony. We review the trial court's evidentiary rulings for an abuse of discretion. *United States v. Universal Rehabilitation Services (PA), Inc.*, 205 F.3d 657, 664-665 (3d Cir. 2000) (holding that plea agreements are governed by Federal Rule of Evidence 403, and a district court's determination whether to admit evidence under the balancing test of R. 403 is reviewed for abuse of discretion.)

Pursuant to Fed. R. Evid. 403, relevant evidence should be admitted unless precluded by another rule of evidence. However, Rule 403 is only a consideration if the evidence in question is relevant. Fed. R. Evid. 401 defines "relevant" evidence as

---

[1] Saavedra entered into a plea agreement whereby he pled guilty and agreed to testify truthfully on behalf of the Government. The government did not call him as a witness in its case in chief against Montoya.

"evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence of a plea agreement is relevant where it allows the jury to assess the credibility of the witness, eliminates jury concerns regarding selective prosecution of a defendant, or where it explains a witness's first hand knowledge of the events. *Id.* at 665. Here, the government argues, without citation to controlling authority, that these factors only apply when the government calls a cooperating co-defendant as a prosecution witness. *See* Appellee's Br. at 17-18. Although we do not agree with the government's attempt to establish a different set of rules when a defendant calls a witness, we need not decide that issue now because the prejudice that Montoya claims is speculative at best.

Here, the trial judge (the Hon. Mary Cooper), went to the extraordinary and commendable length of granting Saavedra immunity so that Montoya could produce him at trial without fear of being denied Saavedra's testimony by his invocation of his Fifth Amendment privilege. The jury therefore had an opportunity to hear him testify for Montoya and the jury was free to accept or reject that his testimony. It is clear that the jury rejected it. Montoya now claims that the jury would have had a more favorable view of his testimony, despite all the evidence against him, if the jury could only have learned that his plea agreement was conditioned upon truthful testimony. The jury knew, of course, that he was under oath when he testified, and we can not agree with Montoya's

3

rather specious argument that knowing more details about the letter of his plea agreement would have altered the jury's assessment of his credibility.[2]

## C.

We also reject Montoya's claim that the trial court erred in excluding Saavedra's undated, "Dear Prosecutor letter." Saavedra purportedly wrote that letter from prison with the help of two inmates. The letter declare's Montoya's innocense and confirms that he thought he was only involved in smuggling liquor. However, despite Montoya's claims to the contrary, the letter does not satisfy any rule of evidence and is clearly inadmissible. Montoya points to evidence that the government established that he and Saavedra rode together days prior to trial as proof of an inference of a recent fabrication. He then argues that the letter should have been admitted to rebut that inference pursuant to Fed. R. Evid. 801(d)(1)(B).

However, the government never argued recent fabrication, and any motive that Saavedra may have had to lie existed long before they rode together on the eve of trial. Thus, Judge Cooper did not abuse her discretion in refusing to admit Saavedra's plea agreement letter.

## C.

---

[2] Although we do not suggest that it is always appropriate for a trial judge to grant immunity to a defense witness in order to afford a defendant the benefit of that testimony, it is clear that Judge Cooper appropriately did so here, and we commend Judge Cooper for her exemplary stewardship of this trial.

Judge Cooper allowed evidence of Montoya's prior conviction for a drug offense into evidence under Fed. R. Evid. 404(b). Although such evidence is not admissible to prove the defendant's bad character, it is admissible for other purposes such as establishing knowledge or absence of mistake. *Id.* In order for evidence of other crimes to be admissible, it must have a proper purpose, be relevant to something other than the defendant's character, its probative value must outweigh its prejudicial impact, and the trial court must give an appropriate limiting instruction. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988). This case is a classic example of the proper use of evidence of other crimes despite its prejudicial impact. Montoya admitted that he was involved in an illegal conspiracy, but claimed that he thought it involved a conspiracy to smuggle liquor into the country, not cocaine. Pursuant to a stipulation between counsel, the jury learned only that Montoya had a prior conviction for drug possession, jurors did not learn of the details of the offense, and the government did not improperly exploit the prior conviction in argument. Moreover, the trial court immediately gave a carefully worded limiting instruction which we must assume that the jury followed. *United States v. Givan*, 320 F.3d 452, 462 (3d Cir. 2003).

Montoya's knowledge of illegal drug trafficking was so clearly relevant to whether he knew he was involved in smuggling cocaine or liquor that we need no further explanation of why the district court's decision to allow this testimony into evidence was not an abuse of discretion.

**D.**

The district court allowed evidence that Saavedra told undercover agents that his "money man," Montoya, was "recommended to us by an office . . . Some guys that move 800 to 1000 things in Los Angeles.  That guy made deliveries like a son of a bitch." Montoya argues that this evidence was also unduly prejudicial and that it should have been excluded as improper evidence of other bad acts. However, we have already explained that such evidence is relevant to Montoya's claim that he thought he was only involved in smuggling liquor, and the court did not abuse its discretion in admitting that evidence.

**E.**

We also review the trial court's decision to deny Montoya's Motion for a New Trial based on newly discovered evidence for abuse of discretion.  *United States v. Chorin*, 322 F.3d 274, 277 (3d Cir. 2003).  Fed. R. Crim. P. 33 provides that newly discovered evidence must "not be merely cumulative or impeaching." Montoya claims that the secret recording of Montes-Lenya establishes she lied when she testified she saw him outside of her home in November of 1998 when his niece, Catalina, asked her to participate in a drug conspiracy.  However, that evidence would "if anything . . . a possible discrepancy." A109. The district court reasonably concluded that the evidence "would not be likely to produce an acquittal in light of all the other evidence that defendant was guilty as charged." *Id*. We agree.

6

**II.**

Although Montoya's challenge to the trial court's evidentiary rulings clearly lack merit, we agree that he is entitled to be resentenced. After the District Court sentenced Montoya, the Supreme Court decided *United States v. Booker*.  Briefly stated, "[t]he Court held that 18 U.S. C. § 3553(b)(1), the provision of the Sentencing Reform Act that makes the Guidelines mandatory, was [unconstitutional] and that it must be severed and excised [from the Guidelines]." *United States v. Ordaz*, 398 F.3d 236, 239 (3d. Cir. 2005).

Here, the court found by a preponderance of the evidence that Montoya was responsible for 116 kilograms of cocaine and sentenced him based upon an assumption that she was required to impose a sentence within the corresponding guideline range. However, it is now clear that the court could not rely upon that drug quantity to increase Montoya's sentence unless he admitted it, or the quantity was proven beyond a reasonable doubt to the jury.

Accordingly, we will remand for resentencing to allow the district court to exercise its discretion and fashion an appropriate sentence pursuant to the Court's holding in *Booker*.

**III.**

For the reasons set forth herein, the order of the District Court is affirmed in part and reversed in part. The matter will be remanded for resentencing.